UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    CYNTHIA J. BORBI,                      Case No. 10-31247-dof
                                                                 Chapter 7 Proceeding
            Debtor.                                  Hon. Daniel S. Opperman
_____/

<u>Opinion Regarding Trustee's Objection to Debtor's Claim of Exemptions</u>

The issue before the Court involves ten $1,000 money orders held by the Debtor, Cynthia Borbi, that constitute the remainder of a $25,000 life insurance payment made after the suicide of the Debtor's husband. The Debtor did not disclose the receipt of the $25,000 in her Statement of Financial Affairs and did not disclose the money orders in her Schedules or Statement of Financial Affairs. Although the Debtor filed her Bankruptcy Petition on March 9, 2010, approximately six months after she received the $25,000, the Debtor neglected to list this asset either in her Schedules or Statement of Financial Affairs.

At the first meeting of creditors held on April 26, 2010, the Debtor initially testified upon examination by her counsel:

    BY MS. SELLIS:

Q. Cynthia, I'm going to show you your bankruptcy petition and here on page 3 is that your signature?
A. Yes.
Q. And are you familiar with the information in the schedules that we filed?
A. Yes.
Q. Was that information correct when it was filed?
A. Yes.
Q. And is it still correct to your knowledge today?
A. Yes.
    MS. SELLIS: I have nothing further.

(Tr., Page 3, Lines 20 - 25; Page 4, Lines 1 - 6).

1

Upon examination by the Trustee, the Debtor testified as follows:

Q. Are you currently married?  Because your schedules say you are single.  Are you married?
A. He died.
Q. Okay.  And ma'am, how long ago?
A. (No audible response.)
Q. Okay.  So - - all right.

(Tr., Page 4, Lines 22 - 25; Page 5, Lines 1 - 2).

Subsequently, after some inquiry about the Debtor's husband's estate, the topic of insurance proceeds came up.

Q. Okay.  Ma'am, did you receive any life insurance?
A. Yes.
Q. And how much did you receive?
A. 25,000
Q. And did you pay any creditors with that money?
A. Just work.  (Indiscernible) money.
Q. I'm sorry, just work.  I don't understand.
A. Oh.  They lent me money to have him buried because I had nothing.
Q. Okay.
A. (Indiscernible)
Q. (Interrupting).  The $25,000 you received in life insurance, what happened to that money?
A. I still have some of it.
Q. Where do you have it? In your bank account?
A. No.
Q. Where is the money?
A. It's in checks, like money orders.
Q. And how much do you currently have?
A. 10,000.
Q. And ma'am, why didn't you disclose that money on your schedules?
A. I was told I didn't have to.  I asked.
Q. Oh, and who told you - -
A. I'm not an attorney.
Q. - - who told you you didn't have to?
A. They said that - -
Q. Who told you you didn't have to disclose it was my question?
A. I believe it was Tom Padgett, but - -
Q. Okay. Here's what we need to do.  We're adjourning this case.  And ma'am, you'll need to bring in the money orders.  I'm adjourning it to next Monday.  You don't have any other exemptions available.  So we'll see you back next Monday, that's May 3rd, at eleven o'clock.  And we'll continue.

(Tr., Page 6, Lines 15 - 25; Page 7, Lines 1 - 24).

2

Two days later, on April 28, 2010, the Debtor amended her exemptions to include the life insurance proceeds described at the first meeting of creditors. The Trustee timely objected to these exemptions and the Court conducted an evidentiary hearing on August 24, 2010.

On August 24, 2010, the Debtor testified about her marriage with her husband and the difficult financial situation they found themselves in over the last few years. The Debtor's husband shot himself and left a note blaming the Debtor for many of the couple's financial woes. At both the first meeting of creditors and the evidentiary hearing, the Debtor testified that her employer lent her some money to cremate her husband. The Debtor also testified that she returned to work approximately one week after her husband's death. The Debtor testified that she received the $25,000, but was afraid to put the money into an account because of the number of creditors that she had, as well as those of her husband. Instead, the Debtor cashed the life insurance check and received 25 money orders in the amount of $1,000 each. In turn, she then repaid her employer and paid other debts, including fees for her attorney in this case, as well as $5,000 for an attorney for her husband's estate.

At the August 24, 2010, evidentiary hearing, the Debtor testified that she is an account manager for Schaeffer Screw Products and is responsible for the payment of bills and preparing financial reports for the accountant of her employer. As part of her duties, she monitors the bank accounts of her employer and insures there are sufficient funds to pay payroll obligations, taxes, and insurance. In that regard, the Debtor testified that she does, from time to time, tell her immediate supervisors that her employer does not have sufficient monies to pay other bills even though there is sufficient money in the account to pay those bills because she has been instructed to set aside sufficient monies to pay the payroll, taxes, and insurance.

The Debtor testified that she was very confused and disoriented from August, 2009, through the filing of her bankruptcy. From the Debtor's appearance in August, 2010, the Court concludes that some, if not all, of that confusion still remains. From the Debtor's appearance, her answers to questions, as well as responsive behavior in Court, the Court concludes that the Debtor is one of the more unique individual witnesses encountered by the Court.

As seen from the Debtor's testimony at her first meeting of creditors, it originally appeared that the Debtor blamed her counsel for the failure to list the checks or the life insurance proceeds. At a previous hearing, the Debtor, through counsel, recanted that position and that position was not taken at the August 24, 2010, evidentiary hearing. Instead, the Debtor at the evidentiary hearing blamed her husband's suicide, as well as her general confusion and the press of other matters for the failure to disclose the remaining life insurance proceeds. In particular, it appears that the Debtor also attributed her failure to disclose these checks on her bankruptcy Schedules and documents to her employer's instructions to her to not disclose monies that may be available to pay bills in the course of her employment. In this regard, the Debtor stated that she knew the checks were available, but that she did not disclose them because she needed this money for other bills, including her income taxes which may run anywhere from $6,000 to $8,000 for 2009, as well as her moving expenses.

At the August 24, 2010, hearing, Debtor's counsel requested time to procure an audio copy of the April 26, 2010, first meeting of creditors hearing. The Court granted counsel's request and set September 30, 2010, as the deadline for producing this copy. Counsel for the Debtor advised the Court that the audio copy was ordered, but unavailable as of September 30, 2010. The Court informally extended the deadline for the production of the audio version of the first meeting of creditors. The Court has since received the compact disc of the first meeting of creditors and has

4

listened to the responses of the Debtor to the questions asked of her on April 26, 2010.

Initially, the Court notes that the transcriber has accurately transcribed the first meeting of creditors. The Court, after listening to the April 26, 2010, audio version of the first meeting of creditors and observing the Debtor on August 24, 2010, reaches certain conclusions about the Debtor's credibility in the analysis portion of this Opinion.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

## Analysis

Schedules may be amended under Federal Rule of Bankruptcy Procedure 1009(a). In the Sixth Circuit, amendments are allowed any time before a case is closed unless the debtor acts in bad faith or property has been concealed. *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984). *Lucius* requires this Court to determine whether the Debtor acted in bad faith or attempted to conceal property of the estate.

In this case, the Debtor received $25,000 from her husband's life insurance. Upon receipt, she paid some creditors and placed the remainder of the proceeds in money orders in $1,000 increments. She has given various reasons for doing this: to set aside money to pay taxes, to have money to pay bills, and for no particular reason. While any of these reasons may be true, none explain why the life insurance proceeds or the remaining money orders were not disclosed in the Schedules or Statement of Financial Affairs. No reasonable explanation is given why the Debtor reaffirmed the correctness of the incorrect Schedules at the beginning of the April 26, 2010, first meeting of creditors. While the Debtor did disclose the life insurance proceeds and the remaining money orders later at the first meeting of creditors, she did so only after questioning by the Trustee,

5

and then did so with an explanation that her attorney told her she did not need to disclose these assets, a position later recanted by the Debtor at the August 24, 2010, hearing.

The Court acknowledges the very difficult life of the Debtor and the resulting impact this life had had on her mental state. The Court has fully considered this aspect of this case in reaching its conclusion that the Debtor concealed the life insurance proceeds and money orders. None of the Debtor's explanations are consistent and none completely or sufficiently explain why the Debtor did not disclose these assets. Although the Court believes the Debtor was mentally distraught and distracted, she had ample opportunities to disclose these assets. Also of note to the Court was the Debtor's decision to place the remainder of the life insurance proceeds in money orders that are admittedly difficult to trace.

Finally, if the Debtor kept these money orders to pay her taxes, this can be done in the administration of her Chapter 7 estate.

The Court concludes the life insurance proceeds and remaining money orders were concealed by the Debtor. Applying the *Lucius* lesson, the Debtor's amended exemptions are not allowed. The Trustee's objections are sustained.

The Trustee is directed to submit an order consistent with this Opinion.

cc:   Stephen Spence

**Signed on January 21, 2011**

　　　　　　　　　　　　　　　　　　　　　/s/ Daniel S. Opperman
　　　　　　　　　　　　　　　　　　　　**Daniel S. Opperman**
　　　　　　　　　　　　　　　　　　　　**United States Bankruptcy Judge**

6

10-31247-dof    Doc 51    Filed 01/21/11    Entered 01/21/11 13:04:03    Page 6 of 6